UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 71.198.226.238,<br><br>Defendant. | Case No. 25-cv-02293-PHK<br><br>**ORDER (1) GRANTING STRIKE 3 HOLDINGS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENA AND (2) ISSUING PROTECTIVE ORDER**<br><br>Re: Dkt. 8 |

Now before the Court is Plaintiff Strike 3 Holdings, LLC's ("Strike 3") *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. [Dkt. 8]. Because Defendant John Doe, subscriber assigned IP address number 71.198.226.238, ("Defendant Doe") has not yet been identified or served, no opposition has been filed. Having reviewed Strike 3's application and all supporting documents, the Court **GRANTS** the *ex parte* application. Further, on the Court's own motion, the Court additionally **ISSUES** a limited Protective Order for the reasons set forth below.

## BACKGROUND

Strike 3 alleges that it is the assignee of copyrights registered with the U.S. Copyright Office to certain adult motion pictures distributed through various adult websites and DVD sales. *See* Dkt. 1 at 1, 6. Strike 3 indicates it is a Delaware corporation located in Camden, Delaware. *Id.* at ¶ 12.

Defendant Doe was named in the Complaint solely in connection with a specific Internet Protocol ("IP") address. [Dkt. 1]. "An IP address is a 'unique numerical address' assigned to every computer and can serve as its identifying characteristic." *United States v. Henderson*, 906 F.3d 1109, 1111 n.1 (9th Cir. 2018). An IP address is not a physical address but instead is a unique

identifier for every computer or server connected to the Internet. *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008). As is well-known, consumers and households connect their home computers and other devices to the Internet by subscribing to such service through a vendor called an Internet Service Provider ("ISP"), often a cable company, telecommunications company, or other similar service provider. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 974 (2005) ("The traditional means by which consumers in the United States access the network of interconnected computers that make up the Internet is through 'dial-up' connections provided over local telephone facilities. Using these connections, consumers access the Internet by making calls with computer modems through the telephone wires owned by local phone companies. Internet service providers (ISPs), in turn, link those calls to the Internet network, not only by providing a physical connection, but also by offering consumers the ability to translate raw Internet data into information they may both view on their personal computers and transmit to other computers connected to the Internet.") (citations omitted).

When a subscriber (or consumer) signs up for internet service, the ISP assigns an IP address to that subscriber – essentially renting out the IP address to the consumer for the duration of their subscription service period. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 575 (N.D. Cal. 1999) ("On the Internet, computers find each other by reference to Internet Protocol (IP) addresses, which are a series of numbers that are used to specify the address of a particular machine connected to the Internet. Domain names are alphanumeric strings that are associated with particular IP addresses. Thus to find the computer at 129.99.135.66, a user might type in uscourts.gov, and would never need to know the actual IP address."). The consumer does not own the IP address – it is controlled by the ISP and allocated to subscribers when they sign up for service. *UMG Recordings, Inc. v. Doe*, No. 08-cv-1193-SBA, 2008 WL 4104214, at *2 (N.D. Cal. Sept. 3, 2008) ("ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes 'online.'. . . [W]hen an ISP is given a defendant's IP address and the date and time of infringement, it quickly and easily can identify the name and address of a Doe defendant, i.e., the ISP's subscriber, because that information is

contained in the ISP's subscriber activity log files.") (citations omitted).  Because the ISP sends monthly or regular bills to the subscriber and has the original service application documents from each subscriber, and because the ISP knows which of its IP addresses were assigned to which customers, it follows that an ISP's internal records should typically include information sufficient to link a customer with the account corresponding to a particular IP address.  *Id.*

Here, Strike 3 avers that it traced the IP address used by Defendant Doe's device to a physical address in the Northern District of California using a geolocation tool developed by a vendor called Maxmind, Inc. ("Maxmind"). [Dkt. 1 at ¶ 9; Dkt. 8 at 17].  Strike 3 avers that by using Maxmind it identified Defendant Doe in this case as a subscriber using assigned IP address 71.198.226.238.  *See* Dkt. 1 at ¶ 9; Dkt. 8 at 17.  Further, Strike 3 alleges, from information obtained by Maxmind, that Comcast Cable Communications LLC ("Comcast") is the ISP for and owner of the IP address which was allocated to Defendant Doe as part of their subscription for internet service from Comcast. [Dkt. 8 at 9].

Defendant Doe is accused of using an internet-connected device and a peer-to-peer file distribution network called BitTorrent to download and distribute, through the internet, copies of Strike 3's copyrighted motion pictures without license or authorization.  *See* Dkt. 1 at ¶¶ 18–44. BitTorrent is a software-implemented protocol for sharing electronic files (such as digitized files of motion pictures, television shows, and other content) directly between individuals' internet-connected devices.  *UMG Recordings*, 2008 WL 4104214 at *1 ("The Internet and peer-to-peer (P2P) networks have spawned an illegal trade in copyrighted works. By downloading P2P software, and logging onto a P2P network, an individual may upload (distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other P2P network user worldwide. [. . .] [S]imilar online media distribution systems emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others.") (citations and footnote omitted).  Strike 3 alleges that Defendant Doe used BitTorrent for "downloading Strike 3's motion pictures as well as distributing them to others[]" and "has been recorded infringing 34 movies over an extended period of time."  *See* Dkt. 1 at ¶ 4.

As a further part of its investigation, Strike 3 alleges it is the owner and operator of an investigative technology tool called "VXN Scan." *Id.* at ¶ 28. Using VXN Scan, Strike 3 allegedly established direct communication connections over the internet (using a "TCP/IP" (or Transmission Control Protocol/Internet Protocol) connection) between Strike 3's investigators' computers and Defendant Doe's device (which was connected to the internet at the IP address named in the Complaint) during a time period when Defendant Doe's device was actively connected to the internet and was allegedly using BitTorrent. *Id.* at ¶ 30. According to the Complaint, VXN Scan searches for and obtains ".torrent" files from a target device and then downloads complete copies of the digital media files that correlate to those ".torrent" files to determine whether those downloaded files are infringing copies of one of Strike 3's copyrighted works. *Id.* at ¶¶ 25–33.

Strike 3 further alleges that VXN Scan connected to Defendant Doe's device via the BitTorrent network, and then after establishing such connection, VXN Scan used metadata called the "Info Hash" value from a .torrent file downloaded from Defendant Doe's device to download a portion of the same digital media file directly from Defendant Doe's device via the BitTorrent network (thus essentially emulating the distribution of digital files of motion pictures from Defendant Doe to another BitTorrent user via the internet). *Id.* at ¶ 36. A comparison of the digital media files apparently revealed that Defendant Doe downloaded and distributed copies of portions of Strike 3's copyrighted works without authorization. *Id.* at ¶¶ 35–44.

Based on these foregoing allegations, on August 27, 2024, Strike 3 filed its Complaint against Defendant Doe alleging copyright infringement under the Copyright Act. *See* Dkt. 1. On September 19, 2024, Strike 3 filed the instant *ex parte* application requesting leave to serve Comcast with a subpoena under Fed. R. Civ. P. 45. [Dkt. 8]. Strike 3 alleges that Comcast has the ability to identify Defendant Doe through the IP address discovered by the investigation discussed herein, because Maxmind's geolocation service has identified Comcast as the owner of the IP address named in the Complaint. *Id.* at 18. Strike 3 represents that the requested subpoena will be limited to seeking from Comcast the name and physical address of the individual(s) having the account associated with Defendant Doe's IP address of 71.198.226.238. *Id.*

**DISCUSSION**

**I.     LEAVE TO SERVE AN EARLY, LIMITED SUBPOENA ON COMCAST.**

Pursuant to Rule 26(d)(1), a party may not seek discovery from any source prior to the parties' conference required by Rule 26(f). However, per Rule 26(d)(1), the Court has authority to allow discovery prior to the Rule 26(f) conference and thus outside this timing limitation. *See also* Fed. R. Civ. P. 26 advisory committee's note (1993) ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases[.]").

The Court may authorize early discovery before the Rule 26(f) conference if the requesting party establishes "good cause" for the early discovery. *Semitool, Inc. v. Tokyo Electron Am. Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs prejudice to the responding party." *Id*.

As with all discovery matters, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "And the court may also set the timing and sequence of discovery." *Id.* at 599 (citing Fed. R. Civ. P. 26(d)). Thus, the decision whether or not to grant early discovery under Rule 26(d) is within the Court's broad discretion. *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1015 (9th Cir. 2010) ("We review district court rulings on discovery matters for abuse of discretion."). Further, a decision to deny early discovery under Rule 26(d) "will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 424 (9th Cir. 2020) (quoting *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). In evaluating a motion for expedited discovery, the District Court in *Med Vets* considered the following factors to determine whether good cause exists to justify the requested early discovery: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, No. 18-cv-02054-MMC, [Dkt. 45] at *3 (N.D. Cal. Nov. 28, 2018) (quoting *Rovio Ent. Ltd. v.*

*Royal Plush Toys, Inc.*, 907 F. Supp. 1086, 1099 (N.D. Cal. 2012)).  The Ninth Circuit affirmed the District Court's decision on the request for expedited discovery.  *Med Vets*, 811 F. App'x at 424.

A request for early discovery, such as the instant *ex parte* application, may arise particularly in a case involving alleged wrongful conduct in connection with use of the Internet.  As discussed by precedent:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor.
>
> In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an (sic) forum in which they may seek redress for grievances. However, this need must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.
>
> Thus some limiting principals should apply to the determination of whether discovery to uncover the identity of a defendant is warranted.

*Columbia Ins.*, 185 F.R.D. at 578 (footnote omitted).

*Columbia* thus identified four factors to assist in determining whether a plaintiff has established good cause to conduct early discovery to identify Doe Defendants.  Courts look to "whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can

6

determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process." *Zoosk Inc. v. Doe*, No. 10-cv-04545, 2010 WL 5115670, at *2 (N.D. Cal. Dec. 9, 2010) (citing *Columbia*, 185 F.R.D. at 578–80). Additionally, the Ninth Circuit has relied on the first and third *Columbia* factors as weighing in favor of granting early discovery to determine an unknown defendant's identity. *See, e.g., Young v. Transp. Deputy Sheriff I*, 340 F. App'x 368, 369 (9th Cir. 2009); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Applying the *Columbia* factors here, the Court find that all four factors weigh in favor of the requested, limited, and early discovery. First, Strike 3 sufficiently alleges enough details to enable this Court to establish that Defendant Doe is more than likely an actual individual who can be legally sued in federal court. Strike 3 alleges Defendant Doe downloaded Strike 3's copyrighted adult motion pictures and distributed them via the BitTorrent network. [Dkt. 1 at ¶ 4]. Strike 3 alleges that one way for Defendant Doe to obtain the digital film files was to specifically direct their BitTorrent client to download the copyrighted media files from a source on the Internet. [Dkt. 8 at 16]. The Court notes that Strike 3's pleadings do not eliminate entirely the possibility that Defendant Doe obtained the files without using the Internet, such as through some form of direct file transfer from a locally connected device, through a transfer from a portable memory device such as a USB drive, or through some form of copying from a DVD or other media. Nevertheless, the Court acknowledges that one reasonably plausible means by which Defendant Doe obtained the digitized film files at issue was through download over the internet.

With regard to distributing the digital film files, Strike 3 avers that Defendant Doe had to specifically set up their BitTorrent client to allow other BitTorrent users to obtain copies of the copyrighted media files from the peer-to-peer network connected via the internet to Defendant Doe's computer (or other electronic device). *See* Dkt. 1 at 6. These allegations strongly suggest Defendant Doe is an identifiable person, a subscriber of the IP address identified by Strike 3, and thus a natural person who can be legally sued in federal court. *Strike 3 Holdings, LLC v. Doe*, No. 17-cv-07051-

7

LB, 2018 WL 357287, at *2 (N.D. Cal. Jan. 10, 2018). Strike 3 alleges it traced each download back to Defendant Doe's IP address geolocated in the Northern District of California, thereby establishing a high likelihood that this Court has jurisdiction over Defendant Doe. [Dkt. 1 at ¶¶ 7-8].

Second, Strike 3 provides a detailed account of steps taken in its attempts to locate and identify Defendant Doe. Strike 3 alleges Defendant Doe downloaded and distributed Strike 3's adult motion pictures using the IP address identified herein, and this IP address was allegedly traced back to the Northern District of California. *Id.* Strike 3 allegedly used multiple methods available to them to attempt to obtain Defendant Doe's identity, including web searches, reviews of numerous sources of authority, and discussions with investigators and cyber security consultants. [Dkt. 8 at 18]. Strike 3 alleges that knowing Defendant Doe's IP address by itself is not enough to establish Defendant Doe's identity. *Id.* Strike 3's expert corroborates the inability to obtain Defendant Doe's identity solely from the IP address. [Dkt. 8-1 at 22 (Declaration of Patrick Paige: "Based on [his] experience in similar cases, Defendant's ISP Comcast Cable is the only entity that can correlate the IP address to its subscriber and identify [the] Defendant.")]. The Court finds that Strike 3's efforts are sufficient to satisfy this factor. *See Strike 3 Holdings LLC v. Doe*, No. 18-cv-06938-WHO, 2019 WL 402358, at *2 (N.D. Cal. Jan. 31, 2019) (finding plaintiff's efforts sufficient, including web searches of the IP addresses, references to other sources of authority, and a declaration from an IT expert stating that the service provider was the only entity with the ability to identify the defendant).

Third, Strike 3's Complaint could withstand a motion to dismiss because the Court concludes that Strike 3 sufficiently pleads copyright infringement under the Copyright Act. "To establish a prima facie case of direct copyright infringement, [a party] must show that he owns the copyright, and that [the alleged infringer] violated one of the exclusive rights set forth in 17 U.S.C. § 106." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1071 (9th Cir. 2021). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citing *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013)). Section 106 of the Copyright Act grants copyright owners six exclusive rights: reproduction, preparation of derivative works,

distribution, public performance, public display, and digital audio transmission of the copyrighted work. *Fahmy v. Jay-Z*, 908 F.3d 383, 393–94 (9th Cir. 2018).

Here, Strike 3 claims ownership of the copyrights for the adult movies that Defendant Doe allegedly downloaded and subsequently distributed to others, all without obtaining authorization or license from Strike 3. [Dkt. 1 at ¶ 46]. Strike 3 alleges that "by downloading the torrent files, Defendant [Doe] triggered a cascade of technical operations, making Defendant [Doe] the 'proximate cause' of all of the violations of Plaintiff's copyrights." [Dkt. 8 at 14]. Without rendering judgment as to the ultimate merits of this case, the Court finds that at this stage Strike 3's Complaint could withstand a motion to dismiss because it has established a *prima facie* case of copyright infringement.

Finally, Strike 3 has established that the requested, limited, and early discovery is likely to lead to identifying information which will likely reveal the identity of Defendant Doe. In order to establish this factor, a Plaintiff must "provide enough concrete details about who these individuals are or how they eventually could be identified, located, and served." *Biesenbach v. Does 1–3*, No. 21-cv-08091-DMR, 2022 WL 17371156, at *4 (N.D. Cal. July 18, 2022). Strike 3 alleges that, as the ISP for Defendant Doe, Comcast has information which would identify Defendant Doe. [Dkt. 1 at ¶ 5]. Comcast allegedly has in its possession the subscriber's name and physical address, since some natural person signed up for and is paying Comcast for the internet service associated with the IP address at issue here. [Dkt. 8-1 at 22 (Declaration of Patrick Paige: "Based on [his] experience in similar cases, Defendant's ISP Comcast Cable is the only entity that can correlate the IP address to its subscriber and identify [the] Defendant.")]. Strike 3 claims Comcast is in a position to provide this limited information in response to the requested early subpoena, and Strike 3 argues that, after receipt of such, it will be able to identify Defendant Doe and ultimately serve process. [Dkt. 8 at 9]. "Even if the subscriber is not the proper defendant, learning his or her identity may allow Strike 3 to work with the subscriber to locate that individual." *Strike 3 Holdings*, 2019 WL 402358, at *3. Accordingly, the Court finds that Strike 3 has made a sufficient showing to satisfy this factor.

Further, applying the good cause factors identified by the District Court in *Med Vets* leads to the same result. *Med Vets*, No. 18-cv-02054-MMC, [Dkt. 45] at *3, *aff'd Med Vets*, 811 F. App'x

at 424. First, while a preliminary injunction is not pending, here the requested early discovery is needed to allow the case to proceed against an unidentified defendant. Second, Strike 3 represents to the Court that the breadth of the proposed discovery request is limited and narrow: the proposed subpoena will only seek from Comcast the name and physical address of the natural person who is the subscriber for the IP address at issue. Third, the purpose for requesting the expedited discovery is discussed above: Strike 3 alleges it needs the discovery in order to be able to identify the person who is Defendant Doe and thus to allow this case to go forward. Fourth, the burden on the target of the discovery to comply with the requested discovery appears cabined by Strike 3's commitment to seek only limited discovery from Comcast and not free-ranging discovery to try to identify Defendant Doe. Finally, Strike 3's request is presented at the outset of this case and thus far in advance of the typical discovery process, but this is by necessity since Strike 3 alleges it needs to identify Defendant Doe in order to pursue the case beyond this filing stage. In sum, in light of the District Court *Med Vets* factors, the Court finds that Strike 3 has demonstrated good cause warranting the requested, early, and limited discovery.

In light of the facts and evidence presented to the Court and applying these facts to the legal standards for early discovery, the Court finds that Strike 3 has demonstrated good cause warranting the requested, early, and limited discovery (specifically, the proposed subpoena to Comcast) to determine the identity of Defendant Doe. Here, in consideration of the administration of justice, the need for the requested discovery (to identify the defendant and allow the case to go forward) outweighs the prejudice to Comcast (the target of the requested discovery) in light of the limited and narrow nature of the requested subpoena. *Semitool*, 208 F.R.D. at 276. Indeed, here the copyright infringement claims are supported by evidence of technical investigation resulting in multiple alleged instances of copyright infringement linked to the one, identified IP address. *Cf. id.* ("It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition."). Therefore, the Court **GRANTS** leave to serve the limited, proposed third-party subpoena on Comcast prior to the Rule 26(f) conference in this matter.

## II. PROTECTIVE ORDER

Courts have discretion to issue a protective order *sua sponte* for "good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). To establish "good cause," there must be a demonstration of specific prejudice or harm that would result from the absence of a protective order. *Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test [for good cause]." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). With regard to a specific type of harm implicated here, the Ninth Circuit acknowledges that people use pseudonyms in their internet communications "when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature[.]'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (balancing "the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party").

Here, good cause exists to protect the privacy and rights of the person who will presumably be identified by Comcast (whether that person is Defendant Doe or a third party who pays for the internet service from Comcast for the subject IP address). In this situation, anonymity is necessary to preserve privacy and protect the person to be identified by Comcast from annoyance and embarrassment because of the sensitive and highly personal nature of adult motion pictures. *See Strike 3 Holdings, LLC*, 2018 WL 357287, at *3 (recognizing that "[a]n allegation that individually illegally downloaded adult motion pictures likely goes to matters of a sensitive and highly personal nature, including one's sexuality"). Further, because Comcast's information produced in response to the requested subpoena may not lead to the proper subscriber, it is necessary to protect the identity of any potential and innocent third parties, as well as protect them from annoyance, embarrassment, or unfairness from deprivation of privacy. *Strike 3 Holdings, LLC v. Doe*, No. 23-cv-01985-AMO, 2023 WL 3483288, at *2 (N.D. Cal. May 15, 2023).

Considering the subscriber's potential status as an innocent third party and the sensitive and personal nature of the subject matter of the suit for both the subscriber and Defendant Doe, the Court

accordingly issues a limited protective order. Any information produced in response to the requested subpoena to Strike 3 by Comcast will be treated as confidential and shall be treated following the restrictions in and as if it were designated "Confidential" under the Northern District of California's Model Protective Order for Standard Litigation. *See* https://www.cand.uscourts.gov/forms/model-protective-orders/. This presumptive confidential treatment of any such material or information produced in response to the requested subpoena shall continue until Defendant Doe (or any other third party identified by Comcast in response to the subpoena) has the opportunity to file a motion with the Court to proceed in the litigation anonymously and pursuant to a Stipulated Protective Order, and the Court has had a chance to rule on that motion. Additionally, a protective order of this nature would comport with Strike 3's admitted policy of respecting privacy in these matters, and Strike 3 indicates that it does not oppose entry of such a protective order (but rather Strike 3 welcomes such a protective order). [Dkt. 8 at 21].

Accordingly in light of the showing of good cause, and in order to preserve the privacy of (and protect from annoyance and embarrassment to) Defendant Doe and any other third parties whose information may be produced by Comcast, and further in light of Strike 3's non-opposition, the Court exercises its broad discretion and on its own motion **ISSUES** a protective order to the limited extent that any information produced by Comcast in response to the requested subpoena will be treated as confidential by all parties in this matter, following the restrictions for material designated as "Confidential" under the Court's Model Protective Order for Standard Litigation. That confidential treatment shall continue until the Court rules upon any motion filed by Defendant Doe (or any other impacted third party) to continue confidential treatment of that information and, in the case of Defendant Doe, to be allowed to proceed in this litigation anonymously. *See Strike 3 Holdings*, 2018 WL 357287, at *3 (citing *IO Grp., Inc. v. Does 1–19*, No. C 10-03851 SI, 2010 WL 5071605, at *2 (N.D. Cal. Dec. 7, 2010)). If Defendant Doe or any other third party fails to file a motion for leave to proceed anonymously within **thirty days** after receiving notice from Strike 3 that Comcast has produced their information, Strike 3 may file a motion seeking withdrawal or modification of the limited protective order. *Cf. Strike 3 Holdings*, 2018 WL 357287 at *3 (citing

*IO Grp.*, 2010 WL 5071605, at *3). The Court further **ORDERS** that any such notice from Strike 3 to Defendant Doe or any other third party shall include or attach a copy of this Order.

Considering the potential social ramifications of a public accusation associated with illegally obtaining adult films, if Defendant Doe or any subscriber identified by Comcast "includes identifying information within his or her request to proceed anonymously, the Court finds good cause to order the papers filed under seal until it has opportunity to rule on the request." *Strike 3 Holdings*, 2018 WL 357287, at *4 (citing *IO Grp.*, 2010 WL 5071605, at *3). In this situation, "the [C]ourt will direct the Doe [D]efendant [or other movant] to submit a copy of the under-seal request to Strike 3 [Holdings] and will ensure that Strike 3 has time to respond." *Strike 3 Holdings*, 2018 WL 357287, at *4.

## CONCLUSION

Pursuant to the discussion herein, the Court **GRANTS** Strike 3's *ex parte* application for leave to serve a limited, early third-party subpoena to Comcast seeking only the specific information described herein. Further, the Court **ISSUES** a limited Protective Order as discussed herein pursuant to Fed. R. Civ. P. 26(c).

**IT IS SO ORDERED.**

Dated: June 13, 2024

PETER H. KANG
United States Magistrate Judge